IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SUSAN H. GRAVELY, ) | |
| ) | Case No. 4:05-CV-00053 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |

Before me is the *Report and Recommendation* of the United States Magistrate Judge. The Magistrate Judge recommends remanding the case for further proceedings in light of new evidence produced by the Plaintiff. The Commissioner filed *Objections to the Magistrate's Report and Recommendation*. I have reviewed the Magistrate Judge's *Report and Recommendation*, the Commissioner's *Objections*, and relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **REJECT** the Magistrate Judge's *Report and Recommendation* and will **SUSTAIN** the Commissioner's *Objections.* The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **AFFIRMED,** and judgment will be **GRANTED** for the Commissioner. This case will be **DISMISSED** from the docket of this Court.

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Plaintiff, Susan Gravely ("Gravely"), a forty-two-year-old woman, applied for Supplemental Security Income benefits on July 11, 2003. On August 25, 2004, an Administrative Law Judge ("ALJ") heard oral testimony in her case. On November 17, 2004, he

1

rendered a decision denying Gravely's request for Supplemental Security Income payments.

At the hearing, Gravely testified that she had obtained her General Equivalency Diploma (GED) in 1983. Although she attended Danville Community College and Danville Business College, she did not obtain a degree from either institution. She claimed that she previously worked for a telephone answering service but has been unemployed since 1992.

The ALJ found that Gravely suffered from scoliosis of the spine and asthma, both of which were "severe" impairments. Additionally, the ALJ determined that Gravely was a recovering alcoholic and that although she had previously been treated for symptoms of social anxiety and depression, those symptoms had been in remission since she stopped drinking in 2001. Thus, neither her depression, social anxiety, nor alcoholism constituted severe impairments. Although Gravely mentioned she had carpal tunnel syndrome in her statements, the ALJ found that she did not directly allege that impairment in her testimony and that none of the medical evidence supported such a claim

Because the ALJ found that none of these impairments met or equaled an impairment listed in Appendix 1 of 20 C.F.R. 404, Subpart P, the ALJ proceeded to examine Gravely's residual functioning capacity and decide if, based on that finding, she could return to her prior work. *See generally* 20 C.F.R. § 416.920 (2006) (detailing the five-step procedure that the ALJ used to determine if Gravely was entitled to benefits). In evaluating Gravely's residual functioning capacity, the ALJ considered all of Gravely's symptoms, medical opinions relating to those symptoms, and whether Gravely had an impairment expected to result in those symptoms. The ALJ found that Gravely had difficulty sitting for an eight hour period due to her scoliosis, that she wore a brace to keep her spine straight, that she took pills that did not entirely

2

eliminate her pain, that she took medication for asthmatic conditions, and that she takes Paxil for depression. As a result, the ALJ found that she could perform sedentary work in a clean air environment in which she could sit or stand throughout the day at her own discretion and not carry more than ten pounds. Relying on the Vocational Expert and Gravely's description of her prior work answering phones, the ALJ determined that she could return to that job and was not disabled.

The Appeals Council held that there was no basis in the record to review or change the ALJ's decision; accordingly, it denied review and adopted the ALJ's decision as the final decision of the Commissioner. Gravely appealed the decision to the District Court, and I referred the case to the Magistrate Judge. While the case was on judicial review, Gravely submitted additional evidence, including a report from a Dr. Leon M. Grigoryev ("Dr. Grigoryev"). The Magistrate Judge found some of the evidence cumulative but because of Dr. Grigoryev's report, recommended remanding the case to the Commissioner for further review in light of that document. The Commissioner objected to the Magistrate Judge's recommendation. Consequently, the only issue before me is whether Dr. Grigoryev's report constitutes a sufficient basis to remand the case to the Commissioner.

## II.  STANDARD OF REVIEW

A district court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g) (2003). To be new, evidence must be "evidence not in existence or available to the claimant at the time of the administrative proceeding."

3

*Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  Moreover, in the Fourth Circuit, evidence must satisfy four additional criteria before it may serve as the basis for a remand to the Commissioner.  First, it must be " 'relevant to the determination of disability at the time the application was first filed and not merely cumulative' " *Borders v. Heckler* 777 F.2d 954, 955 (4th Cir. 1985) (*quoting Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983)).  Moreover, "It must be material to the extent that the [Commissioner's] decision 'might reasonably have been different" had the new evidence been before her.' "  *Id*. (*quoting King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).  Third, good cause must excuse the claimant's failure to submit the evidence while before the Commissioner.  *Id*.  Last, the claimant must present a "general showing of the nature" of the new evidence.  *Id*. (*quoting King*, 599 F.2d at 599).[1]

## III.   DISCUSSION

---

[1] While other courts have disputed the validity of *Borders*, I believe it remains good law. The confusion surrounding this case arose in *Wilkins v. Secretary, Department of Health and Human Services*, 925 F.2d 769 (4th Cir. 1991).  In that case, the Fourth Circuit noted parenthetically that *Borders* was "superceded by amendment to statute."  *Id*. at 774.  The Fourth Circuit vacated *Wilkins* and reheard the case en banc in *Wilkins v. Secretary, Department of Health and Human Services*, 953 F.2d 93 (4th Cir. 1991).  In the second opinion, because the case was decided on other grounds, the Fourth Circuit did not repeat its observation.  *Id*. at 96 (citing *Borders* without commenting on its status).  Consequently, the opinion questioning *Borders* is no longer good law itself.  Subsequently, one district court concluded that the amendment the Fourth Circuit believed superceded *Borders* may not actually have done so.  *See Brock v. Sec. of Health and Human Servs.*, 807 F.Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (*citing Sullivan*, 496 U.S. at 626 n.6 (concluding that *Borders* was never expressly overruled and that language in precedent from the United States Supreme Court indicated that *Borders*'s interpretation of 42 U.S.C.A. § 405(g) remains viable)).  Finally, in the following years, *Borders* has been routinely cited by courts in the Fourth Circuit for its four part test in unpublished opinions.  *See, e.g.*, *Hagerman v. Barnhart*, 96 Fed. Appx. 118, 119 (4th Cir. 2004); *Hudson v. Barnhart*, No. 7:05cv00588, 2006 WL 2126277 at *8 (W.D. Va. Jul. 27, 2006). Consequently, I will rely on *Borders* to interpret 42 U.S.C.A. § 405(g).

4

With the above standard in mind, it is apparent that much of the evidence contained in Dr. Grigoryev's report is not new, within the meaning of 42 U.S.C.A. § 405(g). For example, the report contained generalized descriptions of Gravely's back pain, asthma, and history of psychological impairments and carpal tunnel syndrome. All of these facts were before the ALJ originally. More of the report focused on unremarkable findings, such as normal blood tests, a normal esophagogastroduodenoscopy, and a normal exam that tested Gravely's movement. Other parts of the report centered on diagnoses that could not legally form the basis for a finding of disability, such as a history of gastroesophageal reflux disease, currently quiescent, and an upper respiratory infection.

However, the report does reference one significant piece of evidence that was not originally before the ALJ. The report states that Gravely "had MRI of the lumbar spine without contrast on 9/20/05 which was read by Dr. Michael Spencer as showing mild degenerative disk disease at L3-L4 and L4-L5 without a focal herniated disk, spinal or foraminal stenosis." Obviously, this evidence is new because the MRI occurred on September 20, 2005, over a year after the hearing. However, while sufficiently new, the MRI is technically not relevant because it does not pertain to Gravely's disability at the time she filed her complaint. Rather, the MRI reflects the state of Gravely's back at least twenty-six months after she filed her complaint. Therefore, it is not relevant under *Borders*. *Borders*, 777 F.2d at 955.

Moreover, even if the report were new and relevant, the report is still not material under *Borders*. Under *Borders*, evidence is material if it might reasonably have changed the Commissioner's decision. *Borders*, 777 F.2d at 955. As noted above, the Commissioner could only have granted benefits to Gravely upon a finding that she suffered from an impairment that

5

met or equaled an impairment listed in Appendix 1 of 20 C.F.R. 404, Subpart P or that based on her residual functioning capacity, she could not return to her previous.  20 C.F.R. § 416.920.  None of the conditions described in Dr. Grigoryev's report, including the degenerative disc disease, would meet or equal a listed impairment in Appendix 1.  Therefore, the report could only change the Commissioner's decision if it could alter the ALJ's findings regarding the impact Gravely's residual functioning capacity had on her ability to return to work.

In assessing Gravely's functional limitations, Dr. Grigoryev essentially concluded that Gravely could stand and walk "for not longer than four hours in an eight hour work day with normal breaks," could "sit up to four hours in an eight hour day with normal breaks," could lift "10 pounds frequently and 25 pounds occasionally," should avoid "areas with smoke, dust and fumes," and should not work in situations with more than a few people because of her social anxiety disorder.  The ALJ found that Gravely had the residual functioning capacity to perform "sedentary work, as long as the work is performed in a clean-air environment where she could alternatively sit and stand throughout the day at her own discretion but not be required to lift more than 10 pounds."  Consequently, the only major differences between the two assessments of Gravely's residual functioning capacity are that Dr. Grigoryev found that Gravely could carry up to twenty five pounds and should not work in an environment with many people as a result of her social anxiety disorder.

However, these difference between the two assessments would not likely have caused a different result.  First, Dr. Grigoryev actually concluded that Gravely could lift more weight than the ALJ found.  Therefore, Dr. Grigoryev's opinion would actually strengthen the ALJ's finding in that respect.  Second, the ALJ specifically determined that Gravely could return to her past

relevant work as a "telephone answering person." At the hearing, Gravely testified that when she worked as a telephone answering person, she was alone and her social anxiety disorder presented no impediment to her work. Therefore, even if the ALJ had specifically found that Gravely retained her social anxiety disorder, it would not have had an impact on his decision that she could return to her prior work answering telephones. Consequently, Dr. Grigoryev's report would not have effected the ALJ's decision, as adopted by the Commissioner, because none of Dr. Grigoryev's conclusions would have altered the ALJ's conclusion that Gravely's could return to her prior work. Therefore, the report is certainly not material.

### IV. CONCLUSION

For the reasons stated herein, I will **REJECT** the Magistrate Judge's *Report and Recommendation* and will **SUSTAIN** the Commissioner's *Objections.* The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **AFFIRMED**, and judgment will be **GRANTED** for the Defendant. This case will be **DISMISSED** from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 1st day of November, 2006.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE